# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| COALITION TO PROTECT COWLES BOG AREA, TERRY GRIMM, ROBERT EVANS, and CHERYL EVANS, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     2:12-CV-515 <br>) |
| KENNETH SALAZAR, in his official capacity as the United States Secretary of interior, *et al.*, | )<br>)<br>) |
| Defendants. | ) |

## OPINION and ORDER

Before the Court is Plaintiffs' "Renewed Motion to Supplement the Record" [DE 45], which seeks to add various materials to the administrative record filed by the Defendants in this case. The motion was just fully briefed last night, but because time is of the essence I am providing the parties my decision in this brief opinion so that they can timely file their cross motions for summary judgment. I may choose to supplement this Order when I decide the substance of the case at summary judgment. For the reasons explained below, Plaintiffs' motion will be denied.

This case involves the National Park Service's decision to restore part of Cowles Bog in the Indiana Dunes National Lakeshore to a wetland, a project that involves cutting down some 3,400 trees. The Plaintiffs, who live adjacent to the effected area, abhor the tree cutting plan and filed this case seeking a preliminary injunction halting the project. The motion for preliminary injunction was resolved when the parties agreed to allow the Park Service to cut trees in certain areas of the park, but to temporarily refrain from cutting trees in other areas. [DE 31, 35 and 40.]

The Park Service initially agreed to refrain from cutting in the agreed upon area until March 1, 2013, and the parties later extended their agreement to March 12, 2013. [*Id.*]

The Plaintiffs initiated this action pursuant to the Administrative Procedure Act on the grounds that the Park Service failed to follow the proper procedure in arriving at their decision to restore Cowles Bog to a wetland. In cases like this, where the decision of a federal agency is challenged under the APA, district courts are to review the administrative record to see how the agency reached its decision. *Little Co. of Mary Hosp. v. Sebelius*, 587 F.3d 849, 856 (7th Cir. 2009) ("As a general rule, under the APA, review of an agency's decision is confined to the administrative record to determine whether, based on the information presented to the administrative agency, the agency's decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."). In this case, the Park Service's ultimate decision to embark on the restoration project is embodied in its sixty-two page, March 2012 Environmental Assessment ("EA") and its seven-page November 13, 2012 Finding of No Significant Impact (which goes by the amusing acronym "FONSI").

The key to compiling the administrative record in this case is thus to reconstruct the document trail of how the Park Service arrived at the final drafts of the EA and the FONSI. Deciding what exactly should and should not go into an administrative record – *i.e.*, what's relevant and what's not – can be a bit complicated. To help agencies make these decisions, in 2005 the Department of the Interior issued a thirteen-page document titled "Standardized Guidance on Compiling a Decision File and an Administrative Record." Available at http://www.fws.gov/policy/m0284.pdf. Courts generally assume that the agency has acted in good faith in creating the record and that is why it is entitled to a "presumption of administrative regularity." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739-740 (10th Cir. 1993). As the Tenth

Circuit put it: "[T]he designation of the Administrative Record, like any established administrative procedure, is entitled to a presumption of administrative regularity. The court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." *Id.*

Plaintiffs' Motion argues that the record should be supplemented with four categories of materials: 1) draft versions of the EA, 2) documents related to Plaintiff Cheryl Evans' FOIA requests, 3) several administrative orders from the Director of the National Park Service, and 4) a catchall category of ambiguous other documents. The first two of these categories will be analyzed in some detail below, but let me first quickly dispose of the latter two categories.

First, with respect to the administrative orders from the Director of the National Park Service, Plaintiffs "find it unbelievable" that these orders were not included in the record. [DE 45 at 5.] This type of hyperbole is unhelpful. The bottom line is that these orders are publicly available and can be cited by the parties in their briefs as legal (or really quasi-legal) authority as they deem appropriate. So nothing will prevent the Plaintiffs from citing to them or relying on them in their summary judgment papers; they have no place in the *factual record* of this case, however.

Plaintiffs express concern on "whether they will be able to rely on" the director's orders under Local Rule 7-1(f). [DE 45 at 6.] This concern is entirely unfounded. Local Rule 7-1(f) states in its entirety: "A copy of any decision, statute, or regulation cited in a motion or brief must be attached to the paper if – and only if – it is not available on Westlaw or Lexis. But if a copy of a decision, statute, or regulation is only available electronically, a party must provide it to the court or another party upon request." N.D. Ind. L. R. 7-1(f). I am at a complete loss as to how Plaintiffs could read this rule as somehow preventing them from citing to the director's

orders in their briefing. Moreover, since the director's orders have already been filed in this case, the parties are instructed that they need not provide them again to the Court or attach them as exhibits to further briefing; they should just cite to them as they see fit.

I can also quickly dispose of what I am calling Plaintiffs' "catchall category" of other ambiguous documents. Plaintiffs state:

> Plaintiffs would like to add additional material such as the land patents (Ex. O, Pls. Am. Compl.) and information concerning Henry Cowles to dispute Defendants' claims concerning the 1850 swamp act and Cowles. involvement with the property. Such documents prove the misleading and inaccurate nature of the EA. These documents include the 1986 report by Wilcox, Shedlock & Hendrickson which notes Cowles true involvement with the property.

[DE 45 at 17.] This request is unsupported by any legal theory; instead, it is based on some vague desire ("Plaintiffs would like to add . . ."), and only elliptically identifies exactly what should be included. Indeed, I am at a loss to know what precisely the Plaintiffs wish to add to the record. The use of phrases like "such as" and "information concerning" and "such documents" makes it difficult to decipher what exactly the Plaintiffs are asking to be added to the record. And because, in any event, the Plaintiffs have failed to prove that these items were before the decision-maker or were excluded because of the Park Services' bad faith, there is no basis to include them in the record.

Moving on to the slightly thornier issues involved in Plaintiffs' other two categories: draft versions of the EA and documents related to Plaintiff Cheryl Evans' FOIA requests. As alluded to above, requests to supplement an administrative record fall into two general categories: 1) materials that were considered by the agency decision-makers but were improperly left out of the record when it was filed and 2) materials that show a claim of bad faith or improper behavior on the part of the agency decision-maker. *See, e.g., Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010); *Lands Council v. Powell*,

395 F.3d 1019, 1030 (9th Cir. 2005); *Menominee Indian Tribe of Wisconsin v. U.S. Dept. of Interior*, 2010 WL 4628916, at *3 (E.D. Wis. Nov. 4, 2010).

The documents related to Plaintiff Cheryl Evans' FOIA requests don't fit into either of these categories. These documents are approximately a half dozen pages of emails and letters between Cheryl Evans and National Park Services' employees regarding the status of her FOIA requests. *See* DE 10-5 and 10-6. First, they were not before the decisionmaker when decisions about the EA and the FONSI were made and are completely immaterial to those decisions. Second, while Plaintiffs assert that these document show the Defendants' bad faith, they have not met the high standard required for that argument. That is, in order to overcome the "presumption of regularity" afforded to the government the Plaintiffs have to make a "strong showing of bad faith." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) ("[T]here must be a strong showing of bad faith or improper behavior before [an inquiry into the administrative decisionmaking process] may be made."). Here Plaintiffs' "conclusory statements [of bad faith] fall far short of the 'strong showing' of bad faith required to justify supplementing the record." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996).

The closer question is on the draft versions of the EA that Plaintiffs hope to add to the record. This issue is somewhat complicated because the Department of Interior's aforementioned "Standardized Guidance on Compiling a Decision File and an Administrative Record" indicates that some drafts should be included in the record while others should not. Thus, "[d]rafts of primary or relevant documents indicating substantive deliberations or discussions" *should be* included in the record while draft documents that "simply agree with previous drafts or represent primarily grammatical edits or were not circulated outside the

5

author's immediate office or working group typically should not be included in an AR." The Defendants contend that they complied with this directive in compiling the record: "Defendants included substantive comments and drafts between the Indiana Dunes National Lakeshore and the Regional Director's office, but did not include 'internal working drafts' and comments within the Lakeshore (including between the Lakeshore and the contractor who prepared the EA and FONSI)." [DE 47 at 12.]

Nevertheless, Plaintiffs contend that the various other drafts still should be added to the record. Plaintiffs don't provide a particularly coherent legal theory as to why these drafts should be in the record, but again there are basically two reasons why they would get in – they were actually part of the decisionmaker's decision or they provide evidence of the Defendants' bad faith. Plaintiffs make no argument that these drafts include evidence of bad faith. They do argue that some of these drafts were provided to the decisionmaker and should be included for this reason. But the Defendants have indicated that the drafts that were excluded are only those that were in "the author's immediate office or working group," and these are exactly the sort of drafts that should be left out of the record because they only demonstrate the "internal deliberative process of the agency." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1549 (9th Cir. 1993) ("neither the internal deliberative process of the agency nor the mental processes of individual agency members" are proper components of the administrative record).

A well reasoned Southern District of New York opinion from last year explains why the rule with respect to draft documents should be like this:

> First, as noted, it reflects that it is the agency's articulated justification for its decision that is at issue; the private motives of agency officials are immaterial. Second, not including such materials advances the functional goal of encouraging the free flow of ideas within agencies, with agency employees not inhibited by the prospect of judicial review of their notes and internal communications, which could otherwise render agency proceedings useless both to the agency and the courts.

6

*Comprehensive Cmty. Dev. Corp. v. Sebelius*, __ F. Supp. 2d __, 2012 WL 2953966, at *6 (S.D.N.Y. July 20, 2012) (internal citations and quotations omitted). Furthermore, this policy makes sense in the context of my limited review of an agency's administrative decision, which is simply to ensure that it was "in accordance with the law" and not "arbitrary, capricious, [or] an abuse of discretion." *Little Co. of Mary Hosp.*, 587 F.3d at 856. The D.C. Circuit has aptly summarized this principle:

> When a party challenges agency action as arbitrary and capricious the reasonableness of the agency's action is judged in accordance with its stated reasons. Agency deliberations not part of the record are deemed immaterial. That is because the actual subjective motivation of agency decisionmakers is immaterial as a matter of law – unless there is a showing of bad faith or improper behavior.

*In re Subpoena Duces Tecum Serviced on Office of Comptroller of Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998) (internal quotations and citations omitted). Thus, given that Plaintiffs have not made any strong showing of bad faith, the draft documents that Plaintiffs request are simply immaterial to the question of whether the final decisions in the EA and FONSI were made lawfully and with a rational basis.

Therefore, for the reasons stated above, Plaintiffs' "Renewed Motion to Supplement the Record" [DE 45] is **DENIED**.

    **SO ORDERED.**

    ENTERED: February 13, 2013        s/ Philip P. Simon
                                                      PHILIP P. SIMON, CHIEF JUDGE
                                                      UNITED STATES DISTRICT COURT